Good morning, Your Honors. George Aguilar, representing plaintiffs. I'm going to spend a few moments initially talking about the standard of review. It's been, with respect to Rule 23.1, there has been an application of de novo review as to certain issues and an application of abuse of discretion with respect to demand futility. We would strongly urge the Court to adopt a de novo review across the board for all 23.1 issues. The Court presently applies a de novo review with respect to issues like contemporaneous ownership, subject matter jurisdiction as it relates to 23.1, and that's the Cohn and McQuinn cases. In the Rosenblum case, one of the Court's more recent pronouncements with respect to demand futility, the Court there did apply, as a matter of precedent, the abuse of discretion standard, but it's important to note the dissent in the case. Well, it wasn't a dissent. That's the whole point. Oh, I'm sorry. Yeah, but that's the whole point, right? I guess you have an argument as to why somehow as a three-judge panel we're free to disregard Rosenblum? Is it Rosenblum? I can't keep getting the name confused. Rosenblum, is that the name? Yes, Rosenblum. Yeah. Judge Reinhart concurred because he was bound by circuit precedent to apply that standard of review even though he thought it was wrong, and I feel the same way. I think your argument is 100 percent right, but how would we disregard Rosenblum? I think there is a time and a place where this panel might be able to do so with respect to if it would become material to the Court's decision in the case as to whether or not it should be de novo or whether the abuse of discretion standard would sustain the district court's order. I think in that circumstance, it can be proposed perhaps for embank review that here's an instance where the case or the standard review matters. It's material. And therefore, I think the Court can propose for embank review, and I think essentially that was the invitation by Judge Reinhart. And it would be good for the circuit, I think, to follow the prevailing trail or trend, I should say, in adopting de novo review on 23.1 rulings across the board, especially with respect to demand futility. The first, second recently in 2015 adopted it, the sixth, the seventh, and the eighth circuits now currently employ that. We've already made this decision. I don't know how we didn't do it to go embank. Judge Reinhart concurred with himself in an opinion wanting you to do it a different way. But all three agreed what we were to follow. And I don't know how we can do anything unless our Court goes embank that we could other than do that. I happened to sit on the panel of the case they reviewed, and so I'm not opposed to that. But it seems like to me you could petition for rehearing embank, but I don't think the three of us could do anything to change the very strict determination. I understand the argument. It's not a bad argument, and it's convinced many other circuits. But we're just a humble panel of three, and we can't rewrite the cost. But clearly, Judge Reinhart has said it should come up in the embank court, should do something about it. But we can't follow that. I understood. The second circuit in Espinoza came across a similar circumstance and went ahead and did adopt a de novo review for the entire circuit without going embank. But in any event, I'll move on. You've got three or four circuits your way, and you've got a very strong argument. I'm not saying you won't get embank. I'm just telling you what our power is. Of course. Let me move on, then. And if I can, having not done it initially, I'd like to reserve three minutes for rebuttal. Thank you, sir. With respect to the demand futility issue before the Court, it's important to note that we've only contested one ground of the demand futility ruling, and that is with respect to whether or not the disclosure claim should be reviewed under the second prong of the Arison test as opposed to what the Court did and decided under the Rails test. So that by itself, the incorrect application of the standard of law and the test would constitute an abuse of discretion. So that's our basis for an abuse of discretion in this case, is that the Court applied the wrong test. And that presumes and is built on the foundation that there wasn't board action in the board members, the majority of the board members, seven of the eleven, preparing, reviewing, making, approving, and signing financial statements throughout the period of 2008 through 2012. Let me jump in. Yes. Because I'm looking to you to educate me, because I know you know this stuff way better than I do. But as I read the cases, it doesn't matter which of these two tests applies, because either way you are going to need to allege something equivalent to bad faith. And I the main case that I get stuck on is the Wood case. So maybe you can sift through this stuff and help me see why I'm wrong in that understanding. Well, first of all, we need to establish, and I think we've done that through the arguments that the board collectively acts to submit financial statements to its shareholders through the SEC funds, through financial funds to the SEC. So that constitutes board action. And therefore, you take a look at the second prong of the Aronson test and whether or not there is a valid exercise of business judgment with respect to the second prong. There are cases, the Brehm case, the McFadden case, Oxford Health, CNET, where the Delaware courts and elsewhere, Southern District of New York, have applied the second prong of the Aronson test to activities of the board who are then collectively signing statements, financial statements of the company. Can I stop you because you're not really responding to my question? And I'll be more specific. The reason I say it doesn't seem to me it matters one way or the other which test applies. So you're arguing why it should be the Aronson, and I could care less, because it seems to me even if you're right on that, don't you still need to allege something equivalent to bad faith? Because the directors are exculpated from any claims grounded on gross negligence. So why is that wrong? Because the Delaware courts have made it plain in the Brehm and McFadden courts. I say that it is possible through a grossly negligent process, that is, the board has not been fully informed or properly informed, have gone about a process that leads them to make false and misleading statements, that that grossly negligent process can constitute demand futility under the second prong of Aronson. But have there no reason to question whether they would be independent, unbiased in deciding whether to accept the, the, right? Because they're not going to be on the hook personally if they're exculpated for everything up to gross negligence, right? We're talking about process here and procedures here. So initially this Court is charged with determining whether or not demand futility exists. With respect to whether they're going to be exculpated for a violation of the due care or gross negligence is a step that goes beyond demand futility. This Court is merely charged at the moment, and as we asked the district court, to find that demand was futile based on this grossly negligent process. That can be found here and is found here because there's board action. There are false statements. There's, 10 months before the February 2012 statement, there's a presentation made to the board that in fact shows there's a problem with respect to the heat heat. So there is a basis there to conclude there's at least a grossly negligent process. But so what? That's what I'm saying. Well, so that's all the Court has to resolve for demand futility. With respect to whether or not it's grossly negligent. Then address Wood. Because Wood says you have to have a non-exculpated claim. Absolutely. To establish demand futility, right? And you don't. Well, no, not entirely. I think there, that exclamation or explanatory clause is an affirmative defense and should be raised separate and apart from demand futility. That's Delaware law. That can be raised at summary judgment or at trial. All this Court needs to do is pass on the plaintiff's complaint with respect to demand futility. The parties go into discovery and determine whether or not there's sufficient bad faith, if necessary, under the explication clause, for the case to proceed further. And that can be resolved at summary judgment. That can be resolved at trial. What the McFadden case points out and is that in Oxford Health and CNET is that there can be a finding of demand futility on a grossly negligent process. What happens next, certainly the plaintiffs have the further burden of getting out from this clause, of showing bad faith, under Delaware law. But that's not necessarily what this Court needs to do at this particular juncture. All we've asked, McFadden. What we have to do is decide whether or not, under another State's law, Rails or Aronson applies, correct? I think there's a good argument that can be made that the Aronson test is related to business decisions and everything else is Rails. Would you agree with that? Yes. The second prong of Aronson relates to business acts or actions of the board, business decisions. And that's what we've Anything that's looking, business decisions are really looking forward, we're going to do this. It looks like to me that the particular issues you're dealing with is looking back, press releases, these types of things. So why doesn't that move it towards Rails and not Aronson? Because the board process in approving and sending out a financial statement requires all of the board members to sign on to that statement. Yes. It requires a process by which they're fully informed. And informed of all the material information that would go into it. So they're involved in the review, the approval, and signing collectively as a board. If the board doesn't sign off on the statement, it can't be made. It's an SEC requirement. It doesn't happen without a collective board action. And the action together in the review, approval, and signing of the financial statements constitutes a board action. If we agreed with that, it seems to me everything the board did would be under Aronson. But that isn't what they say over there. They make this distinction between board business and types of things. Everything else is Rails. If there were no signing on of financial statements, then yes, we wouldn't have that type of board action. But that's what happens here. And that's, this claim is not only a breach of loyalty claim, which is not before the court, but a disclosure claim. And that derives from the requirement stated in Brame in the Delaware courts that directors are required to make full, accurate dissemination of information to shareholders. And in this instance, it comes in the form of the financial statements, the reliability of these modules, which spoke directly to how the operational excellence of these modules, when in fact the board knew that there were problems with how the modules handled heat and with respect to how they handled defects with respect to the production of the low power modules. So with those two particular aspects in mind, the board constituted at least a breach of loyalty process and a breach of the duty of due care to have then signed off on those statements, again, disseminating information to the SEC and to shareholders that was false and misleading. And that's our basis for concluding demand futility would be futile. Seven of the board members have, or signed off on those financial statements. And they constitute a majority of the board that's reviewing or that's relevant for the purposes of demand futility for this court. Do you want to save time for rebuttal? Because you're down to one minute and 44. I do. All right. Thank you. Thank you very much. Good morning, Your Honors. Anna Erickson White on behalf of First Solar. It is a fundamental rule under Delaware law that the decision whether or not to initiate litigation can only be taken away from the board under extraordinary circumstances. Those extraordinary circumstances have not been shown by plaintiffs in their complaint as the district court held. There are three independent reasons, and the court has already addressed a couple of those in terms of why the district court's decision was right. The first one, as Judge Watford pointed out, is it doesn't matter what rule applies, whether it's rule Berenson or Rails. And that's because the corporation has an exculpatory provision on its bylaws. And would-be VOM clearly says that the court must consider the exculpatory provision when evaluating demand futility. My opponent is just wrong when he says that it's not supposed to be reviewed at the demand futility stage. Not only does the Delaware Supreme Court say that in would-be VOM, it also says that And it makes sense, as Judge Watford pointed out, because otherwise what you're evaluating is whether the directors face a substantial likelihood of liability. They do not face a substantial likelihood of liability if they are exculpated from that claim. Can you address the — I don't know if it's McPadden or McFadden. McPadden. That's what I thought, McPadden. That case I can't figure out. It just seems a little funky. Yeah. So I agree with you it seems a little funky. Okay. But the way I understand it is, first, the court in McPadden ends up dismissing the claim, right, on the 12B6 motion. Right. And said because it applies the exculpatory provision. The court doesn't address the demand futility analysis whether the exculpatory provision applies in the demand futility context. But under would, it needed to, didn't it? That's what I can't figure out. Right. It — to the — they don't even address it. They're just silent on the point about whether you apply 102B6 in that context. If the court had actually made the holding that you don't apply the exculpatory provision in the demand futility context, that would be in direct conflict with Delaware Supreme Court authority, both would and Stone v. Ritter. So do you just say that we just put McPadden aside as kind of an outlier and we just go with would in the other case that you mentioned? Well, I think you have to go with would because of the Delaware Supreme Court authority and, again, because would doesn't really address the question about whether to evaluate it. I mean, McPadden doesn't really evaluate the question. So the second independent reason is because, as my opponent said, the underlying claim here is a duty of disclosure claim. It is not a breach of the fiduciary duty for due care. And the reason, of course, is because the due care claim is exculpated. As the Delaware Supreme Court held in Malone v. Brinkett, when you're assessing a duty of disclosure claim, the standard is bad faith. Did the directors deliberately mislead when they made false and misleading statements? Therefore, under that claim, the only way the directors can face a substantial likelihood of liability is if they acted in bad faith, if they were intentional and knew that the statements they were making were false and misleading. So those are two independent reasons why the district court was correct. The third reason is that, in any event, Aronson doesn't apply. And this goes to a number of the questions that you were asking, Judge Wallace, is because the question isn't whether it's a decision or whether it's an affirmative act. If that was the question, then that would just — that would swallow everything, and there would be Aronson — it would swallow what rails, basically. The question is, is whether it's a decision where the judgment — business judgment is applied to that decision. And going back to just the reason why there's the business judgment presumption in the first place, it's because courts are not supposed to second-guess decisions of the board of directors. So when a board of directors is making a decision, for example, about whether to — with its CEO or termination agreement, or even whether to enter into litigation, a number of the considerations they have to take are business considerations. It doesn't make sense for the business to do this. What are the costs and benefits to the corporation? And the business presumption says courts are not supposed to second-guess those decisions. Right? So those are the kind of decisions that are applied — that we're looking at, and whether in the Aronson context. Here, that's not what's happening. It's not a business decision that the board is making by issue — by when they sign these statements. There — and there's — there are at least five cases that we cited in our briefs, which look at whether Aronson or rails applies in a demand-futility context, where the underlying claim is that the directors allowed or made false or misleading statements. In each one of those cases, the court said that rails applies, because it was not a business decision. What's the best case on that for you? Seminaris. Seminaris. Yeah. Elandis, where the court directly — so it's a 1995 case. The court directly addresses this issue, says the plaintiffs are arguing it's Aronson, the defendants are arguing it's rails. It's rails, because there's no business decision. So — How does this fit into this so-called looking-forward, looking-backward analysis? I don't — I don't really understand how that makes a difference in terms of, you know, whether — The argument goes that if you're approving something that's already been done, like a press release or a — you're looking backwards. It's not a business decision of going forward. And so rails applies, not Aronson. But I'm not sure that's right. I wanted to get your view. Well, I mean, you could look at it in some ways that way. Because when a court enters into a business decision, they're putting the corporation on the course of conduct, right? So it's a litigation we're going to enter into or we're not going to enter into litigation. The corporation is going to move forward based on that decision. It's entering into — deciding, approving whether or not to sell a subsidiary of the corporation. It's sort of the same thing where you're putting — the corporation is going to — or an act, which is to sell the corporation or enter into a certain kind of agreement, like a termination agreement or an employment agreement. So how would you compare that with approving financial reports? So here they're not — by approving the financial reports, they're not putting the business into — you know, asking the business to do anything. They're just — they're signing a statement that's been put in front of them, mainly about what, you know, the corporation's operations at that point. What have — for example, what are financial statements? That's where this looking backwards approach comes in. Right, at that point. But the real — That would be like press releases, too. Yeah, similar to a press release. And again, the main point is that if you — it doesn't require the application of business judgment, and that's when the, you know, the five cases that we've cited in our brief address this very question. They apply the Rails test as opposed to Aronson. There's not much left. Aronson under the Delaware law. Well, Aronson, if somebody had — so you have to remember, Aronson was brought in 1984. It wasn't until 1986 that Delaware enacted legislation, the 102B7, which allowed corporations to exculpate their directors for liability. So at the time that Aronson came down, you could — it was more like there were — you could bring, and you could still now, a breach of duty of care claim for gross negligence. And if the corporations — the corporations didn't have exculpatory provisions at that time, could — you know, if the plaintiff could show particular facts that the directors were grossly negligent in making a decision, then they would have faced a substantial likelihood of liability. Here we have the exculpatory provision, and we have a different claim, a duty of candor claim. So unless there are other questions on the merits points, just briefly on the standard of review, it doesn't matter here. Whether it's abuse of discretion or de novo, what you're looking at really is a question of law, what standard applies to the demand futility in this context. And for the three reasons I laid out, it's the district court was correct in applying the Batface standard. Thank you. Thank you, counsel. Roboto. Thank you, Your Honor. I think it's important to note, with respect to the looking forward and looking back analysis, the statements, the financial statements that are intended to encapsulize the current state of operations are also intended to have a forward effect. For example, statements with respect to operational excellence, with respect to the modules, with respect to the company, while knowing that there are issues with respect to how it handles heat and low power. Those have an effect or a proposed impact going forward. These are business decisions the board has made to demonstrate to both the SEC and to its shareholders the state of the company, and what confidence and what stock to put into the business plan and the business course that the board has set out on. So I would suggest, and I think it's entirely appropriate, that what's happening with respect to the collective decisions to propose financial statements, propose representations within those statements, that they're intended to cause a future effect intended to execute the business plan of the corporation going forward. So I think with respect to statements made in a financial statement or representations made in a financial statement, the looking forward, looking backward distinction perhaps doesn't matter all that much. It's still a business, a course, a collective business decision, a course the company is embarking on going forward. And I would suggest that that then brings all of this within the second prong of Aronson. Again, we are left with MCPAD, and we are left with Oxford Health and CNET with respect to those cases. I'm sorry? You still have not persuasively addressed Wood. And I look at page 141, 40 to 141, and it's just dead on the money. It says, whichever test applies, you've got to allege a non-exculpated claim. And in this case, that means something rising the level of bad faith. And I don't think you've come close to alleging bad faith. Well, I would suggest if you could take a look at paragraph 163 of the amendment complaint, of the operative complaint that lists all of the particular statements that are false in the board's knowledge going in the board's knowledge with respect to those statements. Paragraph 150 or paragraph 54 and paragraph 145 talk about specifically the Eagle Sham demonstration and presentation to the board, again, 10 months before it's disclosed, with all these particular issues. Now, the court, the district court, determined that those problems or issues were related mostly to the reserve that had been taken out with respect to warranties. But the statements that were post-Eagle Sham presentation also related to the operational excellence of the company and how their modules were performing when, in fact, there were issues and problems that the company was forced to divulge 10 months after the board knew of it. So in that circumstance, that's an inference of bad faith, which we can make from the complaint pursuant to Rosenblum. Rosenblum allows inferences of misconduct to be made in support of demand futility. Rosenblum talks about the — taking the complainants as an — in its entirety to give inferences in favor of the plaintiff. So — Counsel, we understand your argument. You've exceeded your time. Were there any other questions? No, Your Honor. Thank you. Thank you. All right. Thank you to all counsel. The case, as argued, is submitted for decision by the Court.
judges: Wallace, Rawlinson, Watford